**SEAMAN CORPORATION,**
Plaintiff-Appellant,

v.

**REEVES BROTHERS, INC.,**
Defendant-Appellee.

No. 84–3546.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 7, 1985.

Decided Nov. 4, 1985.

Rehearing Denied Dec. 5, 1985.

Edward G. Greive (argued), John A. Tomich, Renner, Kenner, Greive & Bobak, Akron, Ohio, for plaintiff-appellant.

S. Leslie Misrock/Brian M. Poissant, Pennie & Edmonds, New York City, Joseph V. Colaianni, Mark Skakun, Akron, Ohio, Joseph V. Colaianni (argued), Pennie & Edmonds, Washington, D.C., for defendant-appellee.

Before ENGEL, MERRITT and KENNEDY, Circuit Judges.

MERRITT, Circuit Judge.

In this diversity case, Plaintiff, Seaman Corporation, appeals the judgment of the District Court that the defendant, Reeves Brothers, did not breach a patent license agreement which provided for royalty payments by Reeves for the use of a coated fabric patent owned by Seaman. The general issue on appeal is whether the patent and the accused fabric are sufficiently similar so that defendant's sale of the fabric without royalty payments breaches the licensing agreement. This general issue breaks down into two more specific issues: whether Seaman's patent Claim No. 1 and the patent doctrine of "file wrapper estoppel" should be interpreted and applied so as to exonerate the accused product from infringement, as the District Court held. We conclude that the District Court erred in defining the scope of Seaman's Claim No. 1 and also erred in its application of the doctrine of file wrapper estoppel.

## I.

Seaman developed a liquid-coated woven fabric used for tents, tarpaulins and other covers. The patented fabric has an open warp weave in an "ABBA" design, as does the defendant's fabric; that is, the weave consists of altering two smaller sized yarns (the "B" strands) with one larger yarn (an "A" strand) in the direction of the weave known as the "warp" direction (see Appendix). Seaman used one larger strand for the A strand, and Reeves combined two smaller strands through the eye of a heddle to make the larger A strand. This difference creates the first problem in the case.

Seaman, unlike the defendant, used only the larger "A" yarn in the other direction of the weave, known as the "fill" direction. This difference in the uniformity and size of the fill strands creates the other patent problem in the case.

On January 16, 1964, Seaman's founder filed a patent application for this coated fabric, and on May 10, 1966, the Seaman patent for the fabric was issued. The last five lines of Claim No. 1 of that patent, emphasized and quoted below, contain the language at issue:

A liquid coated cloth comprising a base fabric and an elastomeric coating bridging and filling the interstices to define upper and lower surfaces on said coated cloth, said fabric having a warp of strands A and strands B, the denier [a unit of yarn size] of said B strands being approximately one-half the denier of said A strands, both said A and B strands being a continuous filament yarn and being oriented so that two of the B strands alternate with a single of the A strands, said B strands being *substantially out of contact with said upper and lower surfaces of said coated cloth and fill strands, said fill strands woven alternatingly above and below warp successive strands.*

(Emphasis added.) Claim No. 2 of the patent is also relevant, as we will explain later. It reads:

A liquid coated cloth, as set forth in claim 1, in which the denier of said fill strands is approximately equal to the denier of said A strand.

The patent and the drawings which illustrate it are attached as the Appendix.

At approximately the same time as Seaman's patent was issued, the defendant began marketing a coated fabric having the same base fabric weave, both in the warp and fill directions, as that of the Seaman patent. In 1971, Seaman filed suit for patent infringement against Reeves. The settlement of that litigation produced the license agreement at issue. Under this agreement Seaman granted Reeves a non-exclusive license to make and sell the coated fabric covered by the Seaman patent. Reeves was required to pay Seaman a non-refundable advance royalty of $25,000 and an earned royalty of one per cent of the product's net sales up to a total of $125,-000. Reeves paid the $25,000 advance royalty and made some payments of the one per cent earned royalty. Reeves then modified the weave of the fabric it was manufacturing and refused to make further royalty payments. Basically, Reeves began combining two B strands to make the larger A strand and began using the ABBA yarn pattern in both the warp and the fill directions rather than in the warp direction alone.

Seaman filed suit claiming that the modified fabric marketed by Reeves was still covered by Seaman's patent and their license agreement. After a two day bench trial, the District Judge entered judgment in favor of Reeves, finding that Reeves' modified coated fabric did not infringe the Seaman patent.

On appeal both parties appear to accept as generally accurate the following description of the patented item by the District Judge in her memorandum opinion:

> The new type of woven fabric for coating disclosed in the Seaman patent utilizes *warp* strands of *non-uniform* denier. By using warp strands of two different denier sizes rather than warp sizes of uniform denier, the cross over points where a warp strand intersects a fill strand are not all at the same elevation. Rather, the cross-over points form two planes at two different elevations on each side of the woven fabric. The high cross-over points (where a large warp strand intersects a fill strand) act as protectors of the low cross-over points (where a small warp strand intersects a fill strand). When the surface of the rollers, bars, scraping knives and other machinery used in the liquid coating process touches a fabric such as this, it will only contact the high cross-over points, leaving untouched the low cross-over points where the small warp strands are located. The possibility of the woven fabric sliding apart is minimized because the area of contact has been severely reduced.
>
> More specifically, the new type of woven fabric for coating disclosed in the Seaman patent utilizes warp strands of two different denier sizes so arranged that two of the smaller strands alternate with a single larger strand, so that the warp strands form a repeating pattern of AB-BABB, wherein A represents the larger strands and B the smaller strands. The smaller strands are approximately one-half the size of the larger strands. This use of non-uniform denier size warp strands in an ABBABB repeating pattern, wherein A is twice the denier of B, is illustrated by Fig. 2 and Fig. 4 of the Seaman patent. [See Appendix for the patent specifications, description and claims of the Seaman patent in question.] In order to accomplish Seaman's stated objective of stability during coating, the woven fabric to be coated must have warp strands of two different denier sizes in an ABBABB repeating pattern such that the smaller warp strands remain *substantially out of contact* with the machinery used in the liquid coating process.

(App. 23–25.)

The patent holder, Seaman, takes issue with the following portion of the District Judge's description of its product:

> In order to accomplish Seaman's stated objective of stability during coating, the woven fabric to be coated must have fill strands of uniform denier size, regard-

less of what the denier size is. This insures that the smaller B warp strands remain substantially out of contact with the machinery used in the liquid coating process.

(App. 25.) The patent holder contends that neither Claim No. 1 nor its "stated objectives" require that the fill strands be of uniform size. It says that the fill strands can be non-uniform, as is the case of the ABBA fill strands of the accused fabric, and still operate so as to keep the B warp strands "substantially out of contact with said upper and lower surfaces of said coated cloth."

The patent holder also takes issue with the emphasized portion of the following description of the accused product by the District Judge on grounds that differences relied on are meaningless:

Cover light's warp strands [the accused product] are arranged in a non-uniform denier configuration ABBABB wherein an A strand is actually two B strands woven side by side as one. The fill strands are likewise arranged in the same non-uniform denier configuration of ABBABB wherein the A strand is again two B strands woven side by side as one. Assuming the B strands are of 840 denier, the A strands in the warp and fill directions are not a single large strand of 1680 denier, but rather two B strands of 840 denier woven side-by-side as one.

*In the cover light base fabric, the smaller B strands in the warp do not remain interior to the fabric during the coating process and are not substantially out of contact with the plane surface containing the larger A strands of the warp. Since the larger A strands in the warp are actually two of the smaller B strands of the warp woven side-by-side on the same level, there is no substantial difference in elevation between the A strands and the B strands in the warp direction. Consequently, the A strands of the warp do not serve to protect the B strands of the warp from frictional displacement during the coating process.* Moreover, cover light's

base fabric has a non-uniform denier configuration in the fill direction. Reeves' fabric is not completely plainly woven, *and it is clear that Reeves is not using Seaman's concept to solve the instability problem of loose woven fabrics designed for liquid coating.*

(App. 29–30.)

## II.

In its Conclusions of Law respecting the scope and coverage of Seaman Claim No. 1, the District Court concluded that "the small B strands of the warp in the base fabric of the accused Coverlight fabric do not meet" the requirement of the last five lines of the patent, quoted above, that the "small B strands in the warp remain interior to the fabric during the coating process and substantially out of contact with the plane containing the large A strands of the warp." (App. 32.)

█ This conclusion is in error because it is based on a crucial and clearly erroneous finding of fact by the District Court: "Since the larger A strands in the warp are actually two of the smaller B strands of the warp woven side by side on the same level, there is no substantial difference in elevation between the A strands and the B strands in the warp direction." (App. 29.) This finding, issued three years after the trial, fails to consider and take into account the following evidence:

1. Exhibits PX 19A–1, 2, 3, & 4 are microscope photographs of the ABBA warp and fill strands as they cross each other inside the defendant's coated fabric. The microscope photographs enlarge forty times the actual size of the material and its constituent parts. There seems no question that these photographs accurately show the relationship and intervals between the surface of the coated cloth and the strands of the accused fabric. These photographs clearly show that the warp B strands are considerably more "out of contact with the said upper and lower surfaces of said coated cloth" than the warp A strands. The two smaller strands forming

the A yarn are significantly elevated over the interior warp B strands. To the naked eye, upon observing the photographs, the distance between the warp B strands and the surface is more than the distance between the warp A strands and the surface and the difference appears to be approximately 25% to 33–⅓% of the denier of the warp A strands.

2. The defendant's inter-office memorandum, Exhibit DX 24A, p. 2, ¶ IIIA, comments on the licensing agreement before the two-side-by-side-A warp-strand issue arose. The comment appears to take a position directly contrary to the defendant's position adopted by the District Court. The internal memorandum says that "A fabric with two yarns woven as one is no different than the fabric woven with the single yarns of twice the denier." This statement appears to acknowledge that when the fibers of two equal smaller yarn strands are pressed or woven together with a heddle or needle eye, as in the case of the A warp strands of the accused fabric, they produce a strand of the same approximate size or denier as a "single" yarn of twice the denier of the two smaller combined strands. Of course, the precise size or denier of the two combined strands will depend in part on the amount of compression applied in the heddle process, as well as other factors such as temperature that affect density. This internal memorandum admission is an important piece of evidence overlooked by the District Court.

3. The underlined portion below of paragraph 2 of the licensing agreement itself, although somewhat ambiguous, seems to adopt the same position as that taken in the internal office memorandum above. The licensing agreement in paragraph 2 says:

SEAMAN hereby grants and REEVES accepts, a non-exclusive right and license to make, have made, use and sell the coated fabric to which U.S. Letters Patent No. 3,250,662 is directed for the life of said patent, unless sooner terminated as provided herein; it is expressly understood and agreed that as applied to the structure described and claimed in U.S. Letters Patent No. 3,250,662 any and all of the terminology *"strands" employed in the claims of said U.S. Letters Patent No. 3,250,662 means strands comprised of single or multiple filaments which may be positioned or woven as a single end or multiple ends....*

4. As a matter of reasonable inference based on the photographs, combined with the internal memorandum, if the B strands of the accused material are approximately one-half the denier of A strands and the warp and fill strands both cross each other in an ABBA weave pattern, as in the accused material, then—assuming strand A has a unit measurement of two units and strand B a unit measurement of one unit—the width or denier of the points where fill strands A and B cross warp strands A will be four units and three units respectively. Likewise, where fill strands A and B cross warp strand B, the width will be three and two units respectively. If this is so, the interior warp B strands will remain more distant from the coated surface by some 25% to 33–⅓ of the width of the warp A strands when they are crossed by fill A and B strands.

5. Reeves failed to disclose to Seaman during the licensing negotiations that it would refuse to pay royalties if it constructed A strands out of two B strands. It also failed to disclose that it would refuse royalties if it used as a fill pattern the ABBA warp pattern which it acknowledged Seaman had developed. It did not disclose that it would seek to avoid the licensing agreement in this way. In light of the fact that this licensing agreement was not only a contract among businessmen obligated to deal in good faith but also arose in settlement of a proceeding in equity, we believe that Reeves' nondisclosure was somewhat misleading and should not be rewarded.

These considerations—the language of the internal office memorandum, the licensing agreement respecting combined strands, the nondisclosure during negotiations, and especially the intervals between the B warp strands and the coated surface as shown in the microscope photographs—

lead us to the firm opinion that the District Court was mistaken in its crucial finding that Reeves' combination of two B strands to make an A strand means that "there is no substantial difference in elevation between the A strands and the B strands in the warp direction" of the accused material. We, therefore, conclude that the accused material comes within the scope of Seaman claim number 1 because Reeves' warp B strands are "substantially out of contact" with the "surface of the coated cloth."

## IV

■ The District Court also misapplied the doctrine of "file wrapper estoppel" to limit the scope of the Seaman patent to coated cloth in which the denier of the fill strands is uniform. Since the defendant's fabric had used the Seaman ABBA pattern in the fill direction as well as the warp direction, the District Court, after employing the "file wrapper estoppel" limitation, reached the conclusion that the accused fabric is not covered by the patent.

The District Court held that Seaman took the position before the Patent Office, on which the examiners relied, that his patent application was limited to material with uniform fill strands. This holding is based on an oral and a written statement made to the examiners discussing prior art. The prior art had a tendency to allow strands to "bunch" or "slip out of position," and Seaman stated:

Yet the applicant teaches a concept whereby plain woven fabric of synthetic strands will not so bunch or slip. The applicant *conceived* the utilization of strands in one direction of a plain weave having a uniform denier, and the strands in the other direction having pre-selected deniers in a specific, repeating pattern.

The prior art in question, the Bussiere patent, also had uniform fill strands, and this statement was not made to distinguish prior art but simply as a statement concerning the sequence of steps followed during the invention process.

■ In addition, in the patent itself, Seaman explains:

*For best results* it has been found that the denier of the B strand should be one-half the denier of the A strands. The fill, or woof strands, are woven to pass alternatingly above and below successive warp strands in a relatively open weave.

*The most efficient balance strength* of the cloth both along the fill and the warp is obtained when the fill strands are of a denier equivalent to the A strands.

With such a weave a stable cloth can be obtained with a relatively loose weave, thus resulting in a greater loom capacity.

(Emphasis added.) It should be noted that a patent is not normally limited to the "preferred embodiment," or the embodiment that produces the "best results" or the "most efficient balance." *See Vulcan, Inc. v. Fordees Corp.,* 658 F.2d 1106, 1114–15 (6th Cir.1981); *Up-right, Inc. v. Safway Products, Inc.,* 315 F.2d 23, 27 (5th Cir. 1963).

These statements, when taken in context, are not misleading or inconsistent with the position taken by Seaman in this proceeding. The statements do not give rise to "file wrapper estoppel."

■ The express language of the two patent Claims themselves make clear that Seaman is patenting a primary and a secondary concept Claim 1 covers coated material with non-uniform warp strands. Claim 1 does not mention or seek to limit the denier of the fill strands so long as the interior B strands are "substantially out of contact" with the coated surface. Claim 2 then makes a related subsidiary claim. It covers "A liquid coated cloth, as set forth in Claim 1, in which the denier of said fill strands is approximately equal to the denier of said A strands." The District Court erred in reading the limitations of Claim 2 into Claim 1. These are independent claims and should be so treated. *See Environmental Designs, Ltd. v. Union Oil of California,* 713 F.2d 693, 699 (Fed.Cir.1983).

From this background it is clear that during the invention process Seaman used

uniform fill strands, as he told the patent examiners. He believed this method provided the strongest cloth, as the patent states, but he did not limit Claim No. 1 of his patent during the patent examination process to what he thought would make the strongest cloth. Claim No. 1 covers material like the defendant's cloth in which the fill strands are non-uniform. The District Court, therefore, misapplied the doctrine of "file wrapper estoppel" by imposing Claim No. 2's fill limitation on Claim 1 of the patent.[1]

Accordingly, the judgment of the District Court is reversed and the case remanded to the District Court for further proceedings consistent with this opinion.

APPENDIX

May 10, 1966

3,250,662

N. R. SEAMAN

COATED FABRIC

Filed Jan. 16, 1964

FIG. 1

FIG. 2

FIG. 3

FIG. 4

INVENTOR.
NORMAN R. SEAMAN
BY
ATTORNEY

1. In view of our disposition of the "file wrapper estoppel" issue, we need not address Seaman's argument that the doctrine does not apply at all to cases in which the doctrine of equivalents is inapplicable. On the doctrine of equivalents, *see Mead Digital Systems, Inc. v. A.B. Dick*, 723 F.2d 455, 462–63 (6th Cir.1983).

**United States Patent Office**

3,250,662
Patented May 10, 1966

3,250,662
COATED FABRIC

Norman R. Seaman, Holmesville, Ohio, assignor to Domestic Film Products Corporation, Millersburg, Ohio, a corporation of Ohio
Filed Jan. 16, 1964, Ser. No. 338,091
2 Claims. (Cl. 161–91)

The present invention relates generally to fabrics. More particularly, the present invention relates to a particular fabric weave. Specifically, the present invention relates to a particular fabric weave especially adapted for coating by a liquid process.

Coated fabrics are especially suitable for covers, tents, tarpaulins and shelters which may be subjected to wide climatic change, hard usage and exposure to the elements.

While some work is currently being done with non-woven fabrics, the woven fabric provides a uniformity to the distribution of the fibers and therefore has the advantage of itself having mechanical strength which is in turn imparted to the finished coated fabric.

In coated fabrics an additional type of fabric strength is equally as important as the tensile and tear strengths of uncoated fabrics. That is, adhesion strength, or the strength of the bond between the coating and the fabric. Adhesion strength is the foundation for abrasion resistance, flex resistance and seam strength, particularly in bonded, as distinguished from sewn seams, where the only joinder is through the bonding of the contiguous coating material along the seam where the two fabrics are joined.

Heretofore, it has been axiomatic that adhesion and tear strength are inversely related. This was to a great degree the result of coating fabrics woven by previously known weaves. Loose weave fabrics are considered most favorable for providing a high degree of adhesion strength because the coating material can readily penetrate the interstices between the strands and form an homogenous bond with the coating on the opposite surface. However, the more open the weave the less tear strength because the strands are less capable of bunching to resist the tearing stress. Moreover, the more openly woven fabrics are far less stable in handling prior to being coated.

The loose weaves are less stable in that the adjacent strands of the warp or fill will easily slide apart—i.e., "pull" or "pucker" —when subjected to the least friction as for example, when passing over a roller, bar or knife.

These pulls prior the coating further reduce the tear strength and in many cases cause too great a span between strands to retain the coating material, thus also affecting the appearance and acceptability of the cloth.

The tensile strength of the material may also be related to the type weave. For example, in a loose weave there are less strands per inch and accordingly less tensile strength than in more tightly woven fabrics where there are more strands per inch to resist tensile stress.

However, the particular type strand material is probably the greatest factor in tensile strength. The spun fabrics, such as cotton, wool and the like, with their short to medium fiber lengths, simply cannot provide the tensile strengths of the continuous filament strands such as nylon, Dacron, glass, or the like.

Here too any inverse relationship between adhesion strength and tensile strength exists unless elaborate preparatory processes are performed. Specifically, additional adhesion is obtained by the use of fibrous strands the roughened fibers of which can anchor in the coating material, but with non-fibrous strands of the continuous filament variety, no natural bonding can exist between the stand and the coating. Accordingly, it is the common practice to treat cloth woven of continuous filament strands with a cement to create a bond between the strand material and the coating. Thus, an additional step is required to make the cloth bond to the coating. Aside from the fact that the preparation of the cloth requires the performance of an additional process, it is also expensive to apply the chemical and then dry the cloth before subsequent operations.

In addition to the considerations of the strand material and the weave, one must further consider the type of coating process.

The coating of weave fabrics may be accomplished by any of three methods: laminating, calendering or liquid coating. In laminating, a sheet, or film, of the coating material is placed on either, or both sides

of the cloth and then, under high pressure, and generally with the application of heat, forced into the cloth. The high cost of the machinery required to accomplish this method and the necessity of an extremely open weave to obtain bonding virtually eliminates the practical feasibility of the lamination process for making continuous coated fabrics having both high tear and adhesion strengths. Furthermore, the vagaries incident to the exact application of heat and pressure as well as the variation in thread spacings in the loose weave cloth best suited for the lamination process are responsible for wide variations in the adhesion strength.

In the calendering process the fabric is passed between the opposed rolls of the calender. The coating is continuously charged into the bite of the opposed rollers in a viscous, or paste-like, consistency, whereby they are pressed into the fabric. The pressure utilized in a calendering operation can readily force the coating material into the fibrous strands of cloth woven of spun yarns. However, even the most extreme pressure cannot bond the coating material to continuous filaments. Hence, with cloths made from continuous filaments the weave must either be an available unstable open type, with an attendant decrease in tensile and tear strength, or the cloth must be preliminarily treated to impart a chemical adhesion.

The third process, liquid coating, merely requires that the fabric be passed across a series of guide rollers and through a liquid coating bath where enough of the fluid material adheres to the fabric to coat it.

This last method is not only continuous but requires the least amount of apparatus. However, here too the cloth, its strand material and weave, accounts for operational difficulties which have made it virtually impossible effectively to utilize this method. Loose weave fabrics appear excellent for liquid coating since the interstices between the strands of the weave permit the coating on either surface to bond together and thus impart a great mechanical adhesion between the coating and the cloth. However, as pointed out supra, most loose weaves are unstable and are readily damaged by handling prior to coating. Moreover, these loose weaves do not completely retain the liquid coating when the fabric passes over rollers, bars or knives before the coating is completely gelled.

Nor is the panacea found in the use of tightly woven cloth. The tightly woven cloth is more expensive to weave, and, being tightly woven, has such small interstices between the strands that liquid does not sufficiently penetrate the cloth to impart a satisfactory mechanical adhesion.

Nor does the use of different strand materials effect any more favorable result than with the previously described processes.

It is therefore the primary object of the present invention to provide a cloth having stability–i.e., will not pull or pucker by normal handling or as it passes over rollers, bars, knives and the like–for handling and yet providing sufficient interstices to impart mechanical adhesion even when a continuous filament strand is coated.

It is another object of the present invention to provide a cloth, as above, permitting a sufficiently high order of mechanical adhesion with continuous filament yarns that chemical adhesion can be greatly reduced.

It is also an object of the present invention to provide a woven cloth suitable for liquid coating and which retains the coating even when the cloth comes in contact with external objects before the liquid coating is gelled.

It is a further object of the present invention to provide a stable fabric, as above, which can be woven with low count fill picks with high tear strength both parallel to and transversely of the warp.

These and other objects of the present invention which will become apparent from the following specification are accomplished by means hereinafter described and claimed, the invention being measured by the appended claims and not by the details of the specification.

In the drawings:

FIG. 1 is a top plan view of a section of coated fabric according to the concept of the present invention;

FIG. 2 is a cross section taken substantially on line 2–2 of FIG. 1;

FIG. 3 is a schematic representation of the liquid process; and

FIG. 4 is a trimetric perspective of the woven cloth prior coating.

In general, a cloth woven according to the present invention and suitable for liquid coating utilizes a warp having strands of two different denier so arranged that two of the smaller denier strands alternate with single strands of the larger denier. The fill strands, which are preferably of a denier equivalent to the larger of the warp strands, are woven to pass alternatingly above and below successive warp strands, irrespective

of whether they are those of larger or smaller denier.

Referring more particularly to the drawings, a section of coated fabric is indicated generally by the numeral 9. The base 10 of coated favric 9 is woven with warp strands of two different denier. The larger of the warp strands A are alternatingly spaced with two strands of the smaller denier strands B such that the warp comprises a repeating pattern A, B, B; A, B, B; A, B, B; A, etc.

For best results it has been found that the denier of the B strands should be one-half the denier of the A strands. The fill or woof strands, 11, are woven to pass alternatingly above and below successive warp strands in a relatively open weave.

The most efficiently balanced strength of the cloth both along the fill and the warp, is obtained when the fill strands 11 are of a denier equivalent to the A strands.

With such a weave a stable cloth can be obtained with a relatively loose weave, thus resulting in a greater loom capacity.

The above weave is particularly desirable for cloth made from continuous filament yarns. The weave being loose, permits sufficient penetration of the coating material 12 to effect the mechanical adhesion bond between the surface coating 12A and surface coating 12B. Moreover, the smaller yarns of the warp are found to lock and thereby stabilize the fill in order to prevent puckers or pulls. At the same time, these smaller yarns will slide under the stress of a tear loading to bunch with the larger yarns and thus increase the tear strength.

Finally, the smaller yarns, so interposed between the larger yarns, remain substantially out of contact with the rollers, bars, knives and the like which the cloth contacts during the coating process. The smaller strands B thus provide a base by which the coating material can be held into the fabric and thus effectively bridge between the larger, or primary, warp strands as the fabric is brought in to contact with external objects before the liquid coating gels.

A fabric woven as above from continuous filament yarns can for the first time be satisfactorily coated with an elastomeric coating by the liquid process.

As shown in FIG. 3 the base fabric 10 can pass across a feed roller 13, into a bath of liquid elastomer 14 beneath a submersion roller 15, out across a withdrawal roller 16 and between wiper bars 17 and 18 and remain completely and uniformly coated. Little or no waste is involved. The base fabric is stable and the coating adheres uniformly, thus giving exceptional tear and adhesion strength, the latter being so high that the coated fabric may readily be joined by welds which bond the coatings.

It should thus be apparent that a coated fabric according to the concept of the present invention readily accomplishes the objects thereof.

What is claimed is:

1. A liquid coated cloth comprising, a base fabric and elastomeric coating bridging and filling the interstices to define upper and lower surfaces on said coated cloth, said fabric having a warp of strands A and strands B, the denier of said B strands being approximately one-half the denier of said A strands, both said A and B strands being a continuous filament yarn and being oriented so that two of the B strands alternate with a single of the A strands, said B strands being substantially out of contact with said upper and lower surfaces of said coated cloth and fill strands said fill strands woven alternatingly above and below warp successive strands.

2. A liquid coated cloth, as set forth in claim 1, in which the denier of said fill strands is approximately equal to the denier of said A strands.

### References Cited by the Employer

UNITED STATES PATENTS

| 718,499 | 1/1903 | Mitchelsen | 139–426 |
| 1,772,458 | 8/1930 | Diamond | 161–90 X |
| 1,826,217 | 10/1931 | McConoughey | 161–89 |
| 2,720,226 | 10/1955 | Hejwith | 139–426 |
| 2,771,659 | 11/1956 | Ball | 28–73 |
| 2,787,570 | 4/1957 | Lott et al. | 139–420 X |
| 2,817,371 | 12/1957 | Bussiere | 139–383 |
| 2,825,168 | 3/1958 | Ekman | 161–89 |
| 2,874,729 | 2/1959 | Ball | 139–426 X |

FOREIGN PATENTS

| 887 | 1861 | Great Britain. |
| 10,942 | 1845 | Great Britain. |
| 12,272 | 1910 | Great Britain. |

ROBERT R. MACKEY, *Primary Examiner.*
DONALD W. PARKER, *Examiner.*
J. KEE CHI, *Assistant Examiner.*